**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LARUE GRAVES, ) | |
| ) | Civil Action No. 14 – 1680 |
| Petitioner, ) | |
| ) | Chief Judge Joy Flowers Conti |
| v. ) | Magistrate Judge Lisa Pupo Lenihan |
| ) | |
| LARRY MAHALLY, Superintendent, ) | |
| and THE ATTORNEY GENERAL OF ) | |
| THE STATE OF PENNSYLVANIA, ) | |
| ) | |
| Respondents. ) | |

**REPORT AND RECOMMENDATION**

**I.      RECOMMENDATION**

For the reasons that follow, it is respectfully recommended that the Petition for Writ of Habeas Corpus filed by Petitioner Larue Graves (ECF No. 1) be denied and that a Certificate of Appealability also be denied.

**II.     REPORT**

Before this Court is a Petition for Writ of Habeas Corpus filed by Petitioner Larue Graves ("Petitioner") pursuant to 28 U.S.C. § 2254.  (ECF No. 1.)  Petitioner challenges his judgment of sentence of life imprisonment entered on October 18, 2006, in the Court of Common Pleas of Allegheny County, Criminal Division, docketed at Criminal Case Number 200518626, following his conviction for criminal homicide (third-degree murder) and carrying a firearm without a

license.[1]  For the following reasons, Petitioner's application for federal habeas corpus relief

should be denied.

## A.  **Background**

Petitioner was arrested and charged with third-degree murder as a result of a shooting

incident that occurred on November 9, 2005, in a movie theater located in Homestead,

Pennsylvania, which resulted in the death of Shelton Flowers, the victim.  The facts of the crime,

as described on direct appeal by the Pennsylvania Superior Court in its Memorandum dated

August 7, 2008, are as follows:

> Appellant and Natalie Mack, his date, went to the Loew's Theater to watch a film.
> In the midst of the film, Appellant went to the restroom, where he encountered
> Tarue Bailey, an acquaintance, and the two men spoke to each other.  While
> [Appellant] was washing his hands, the victim entered the restroom, said, "What's
> up" to Appellant, whereupon Appellant returned the greeting and continued to
> talk to Bailey.  Thereupon, the victim punched Appellant in the side of the head,
> knocking him against the sink, and then quickly exited the restroom.
> [Commonwealth witness Luther Mackson observed the events that transpired in
> the restroom.].  At that time, Bailey and Appellant rushed out of the restroom
> after the victim, procuring a firearm as he ran.  While running out of the bathroom
> and into the lobby of the theater, the victim bumped into the friend of
> Commonwealth witness Jason Fisher, who saw Appellant, gun in hand, challenge
> the victim by saying, "What's up now, bitch," which was followed by Appellant
> shooting the victim.  Fisher testified that the victim only produced a firearm after
> he was struck by the shots fired by Appellant.  Thereafter, the victim died from
> his wounds.

Commonwealth v. Graves, 961 A.2d 1275 (Pa. Super. 2008) (unpublished memorandum)

(footnotes omitted), *appeal denied*, 963 A.2d 468 (Pa. 2009); (Resp't Ex. 14; ECF No. 8-4 at

pp34-35.)

---

[1] Petitioner was charged with one count of Criminal Homicide, 18 Pa. C.S.A. § 2501(a); one
count of Firearms not to be Carried Without a License, 18 Pa. C.S.A. § 6106, and one count of
Persons not to Possess a Firearm, 18 Pa. C.S.A. § 6105(a)(1).  The Persons not to Possess a
Firearms charge was later severed and docketed at Criminal Case Number 200518627.

### 1.  <u>Trial, Sentencing, and Premature Appeal – Procedural History</u>

On May 8, 2006, Petitioner proceeded to a jury trial before the Honorable John K. Reilly.
Petitioner was found guilty on May 12, 2006.  (Resp't Ex. 1; ECF No. 8-1 at pp.1-14.)

On May 15, 2006, the Commonwealth filed a Notice of Mandatory Minimum Sentence.
This filing stated the Commonwealth's intention to proceed at sentencing under 42 Pa. C.S.A. §
9715, which required a mandatory sentence of life imprisonment.  The enhanced sentence was
due to Petitioner's conviction for third-degree murder in conjunction with his previous
conviction for voluntary manslaughter.  (Resp't Ex. 2; ECF No. 8-1 at pp.15-17.)

On May 19, 2006, Petitioner filed post-sentence motions.  (Resp't Ex. 3; ECF No. 8-1 at
pp.18-29.)

On October 17, 2006, the Commonwealth filed a brief in opposition to the post-sentence
motions.  (Resp't Ex. 4; ECF No. 8-1 at pp.30-44.)

On October 18, 2006, the parties appeared for sentencing.  Brief argument was heard on
the post-sentence motions.  Petitioner also entered a guilty plea to the severed firearms count in
exchange for no further penalty.

On October 25, 2006, Petitioner filed a second copy of the post-sentence motions.
(Resp't Ex. 5; ECF No. 8-2 at pp.1-11.)

On November 14, 2006, Petitioner filed a *pro se* Notice of Appeal to the Superior Court
of Pennsylvania, which was subsequently docketed at 2132 WDA 2006.  (Resp't Ex. 6; ECF No.
8-2 at pp.12-14.)  This appeal was discontinued on November 27, 2006, by Victoria H. Vidt,
Esquire, of the Office of the Public Defender.[2]  (Resp't Ex. 7; ECF No. 8-2 at pp.15-17.)

---

[2] The appeal was presumably discontinued because Judge Reilly had yet to act on the post-sentence motions and the motions had not yet been denied by operation of law.

On April 12, 2007, the post-sentence motions were denied by operation of law. (Resp't Ex. 8; ECF No. 8-2 at p.18.)

### 2. <u>Direct Appeal – Procedural History</u>

On May 7, 2007, Petitioner filed a counseled Notice of Appeal, subsequently docketed at 847 WDA 2007. (Resp't Ex. 9; ECF No. 8-2 at pp.19-22.)

On June 19, 2007, Petitioner filed a Concise Statement of Matters Complained of on Appeal. (Resp't Ex. 10; ECF No. 8-2 at pp.23-25.)

On August 27, 2007, Judge Reilly issued his Pa. R.A.P. 1925(a) Opinion responding to the allegations of error. (Resp't Ex. 11; ECF No. 8-2 at pp.26-31.)

On December 12, 2007, Petitioner filed a brief. (Resp't Ex. 12; ECF No. 8-3.) The Commonwealth filed its response on January 22, 2008. (Resp't Ex. 13; ECF No. 8-4 at pp.1-30.)

On August 7, 2008, the Superior Court denied relief in an unpublished memorandum opinion. The Honorable Richard J. Klein dissented. (Resp't Ex. 14; ECF No. 8-4 at pp.31-45.)

On September 4, 2008, Petitioner filed for discretionary review with the Supreme Court of Pennsylvania. (Resp't Ex. 15; ECF No. 8-5); (Resp't Ex. 36; ECF No. 8-11 at pp.21-23.) The Commonwealth filed a "no answer" letter on September 10, 2008. (Resp't Ex. 16; ECF No. 8-6 at p.1.)

On January 13, 2009, the petition was denied. (Resp't Ex. 17; ECF No. 8-6 at p.2.)

### 3. <u>Collateral Review – First PCRA – Procedural History</u>

On July 20, 2009, Petitioner filed a *pro se* petition for relief under Pennsylvania's Post Conviction Relief Act ("PCRA"). (Resp't Ex. 18; ECF No. 8-6 at pp.3-36.) Sandra A. Kozlowski, Esquire was appointed to represent Petitioner and entered her appearance on August 6, 2009.

On April 15, 2011, following several requests for extensions of time, Petitioner filed an Amended PCRA petition. (Resp't Ex. 19; ECF No. 8-6 at pp.37-49.)

On May 5, 2011, the Commonwealth filed an Answer to the petition. (Resp't Ex. 20; ECF No. 8-7 at pp.1-23.)

On March 29, 2012, a PCRA hearing was held before the Honorable David R. Cashman.[3]

On May 17, 2012, Judge Cashman issued an order denying the petition. (Resp't Ex. 21; ECF No. 8-7 at p.24.)

### 4. <u>Collateral Appeal – Procedural History</u>

On June 13, 2012, Petitioner filed a Notice of Appeal of the denial of PCRA relief; subsequently docketed at 1033 WDA 2012. (Resp't Ex. 22; ECF No. 8-7 at pp.25-29.) Attorney Kozlowski also filed a concurrent Motion to Withdraw due to her accepting a job with the Pennsylvania Attorney General's Office. Judge Cashman granted the request, and Attorney Thomas Farrell entered his appearance on February 27, 2013.

On April 29, 2013, Judge Cashman issued his Pa. R.A.P. 1925(a) Opinion. (Resp't Ex. 24; ECF No. 8-7 at pp.33-44.)

On October 30, 2013, Petitioner filed his brief. (Resp't Ex. 25; ECF No. 8-8.) The Commonwealth filed its reply brief on December 2, 2013. (Resp't Ex. 26; ECF No. 8-9 at pp.1-21.)

On January 28, 2014, a panel of the Superior Court denied relief. (Resp't Ex. 27; ECF No. 8-9 at pp.22-44.)

---

[3] Judge Reilly passed away in September 2011.

On February 21, 2014, Petitioner filed a petition for appeal with the Supreme Court of Pennsylvania. (Resp't Ex. 28; ECF No. 8-10.) The petition was docketed at 87 WAL 2014. (Resp't Ex. 36; ECF No. 8-11 at pp.21-23.)

On February 25, 2014, the Commonwealth filed a "no answer" letter to the petition. (Resp't Ex. 29; ECF No. 8-11 at p.1.)

On June 11, 2014, the petition was denied. (Resp't Ex. 30; ECF No. 8-11 at p.2.)

### 5. <u>Collateral Review – Second PCRA – (Still Pending)</u>

By document dated November 21, 2014 (docketed December 1, 2014) Petitioner filed a second petition for relief under the PCRA. (Resp't Ex. 31; ECF No. 8-11 at pp.3-8.)

On January 7, 2015, the Commonwealth filed its Answer to the petition, asserting that the petition was untimely. (Resp't Ex. 32; ECF No. 8-11 at pp.9-15.)

On March 3, 2015, Judge Cashman issued a Notice of Intent to Dismiss the petition. (Resp't Ex. 33; ECF No. 8-11 at p.16.)

On March 31, 2015, Petitioner filed a request for an extension of time to file a response, which Judge Cashman granted the same day. (Resp't Ex. 34; ECF No. 8-11 at p.17.)

On July 13, 2015, Petitioner filed his opposition to the court's intent to dismiss.[4]

On July 15, 2015, Judge Cashman dismissed the petition as time-barred.

On August 7, 2015, Petitioner filed a notice of appeal to the Superior Court.

---

[4] This document, and the few that follow, were not submitted as part of the record because they were not submitted to the state courts until after Respondents' Answer was filed on April 10, 2015. However, the Court takes judicial notice of these documents for purposes of these federal habeas proceedings. *See* Fed. R. Evid. 201(d); Cooper v. Pa. State Att'y Gen., No. 2:06cv1332, 2007 WL 2492726, at *2 (W.D. Pa. Aug. 30, 2007) (reiterating that a federal court may take judicial notice of state court records and dockets).

On December 7, 2015, Petitioner filed his Concise Statement of Matters Complained of on Appeal.

On February 16, 2016, Judge Cashman issued his Pa. R.A.P. 1925(a) Opinion.

The appeal is still pending. *See* Commonwealth v. Graves, 1307 WDA 2015 (Super. Ct.).

### 6. **Federal Habeas – Procedural History**

On December 12, 2014, Petitioner filed the instant Petition for Writ of Habeas Corpus. (ECF No. 1.)  The Petition raises four claims, summarized as follows:

1. Ineffective assistance of counsel for not objecting to prosecutor's closing argument.

2. Ineffective assistance of counsel for failing to argue to the jury the Commonwealth's burden in disproving Petitioner's self-defense claim.

3. Constitutional violation for failing to instruct the jury on "heat of passion."

4. The mandatory life sentence based on a previous voluntary manslaughter conviction violates the constitutions of the United States and or Pennsylvania.

Respondents filed their Answer to the Petition on April 10, 2015.  (ECF No. 8.)

### B. **Standard of Review**

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA"), habeas relief is only available on the grounds that Petitioner's judgment of sentence was obtained in violation of his federal constitutional rights.  28 U.S.C. § 2254(a).

As codified at 28 U.S.C. § 2254(d), AEDPA provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was *contrary to,*[5] *or involved an unreasonable application of,*[6] *clearly established Federal law, as determined by the Supreme Court of the United States*; or

(2) resulted in a decision that was based on an *unreasonable determination of the facts in light of the evidence presented in the State court proceeding.*[7]

---

[5] "The test for § 2254(d)(1)'s 'contrary to' clause is whether the state court decision 'applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it contradicts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result.' Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams v. Taylor, 529 U.S. 362, 405 (2000), and Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)). Of course, a state court's resolution of a question that the Supreme Court has not resolved can be neither contrary to, nor an unreasonable application of, the Court's precedent. *See* Kane v. Garcia Espitia, 546 U.S. 9 (1995)." Roundtree v. Balicki, 640 F.3d 530, 537 (3d Cir. 2011) (bracketed text in original) (parallel citations omitted).

[6] "The test for § 2254(d)(1)'s 'unreasonable application of' clause is as follows: '[a]n 'unreasonable application' occurs when a state court 'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts' of petitioner's case.' Rompilla v. Beard, 545 U.S. 374, 380 (2005) (quoting Wiggins v. Smith, 539 U.S. 510, 519, 520 (2003)). For purposes of § 2254(d)(1), '[i]t is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous.' Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (internal quotations omitted). "Under § 2254(d)(1)'s 'unreasonable application' clause . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.' Id. at 75-76, 123 S. Ct. 1166 (quoting Williams v. Taylor, 529 U.S. 362, 411 (2000)). Rather, '[t]he state court's application of clearly established law must be objectively unreasonable' before a federal court may grant the writ. Andrade, 538 U.S. at 75." Roundtree, 640 F.3d at 537 (parallel citations omitted).

[7] "The test for § 2254(d)(2)'s 'unreasonable determination of facts' clause is whether the petitioner has demonstrated by 'clear and convincing evidence,' § 2254(e)(1), that the state court's determination of the facts was unreasonable in light of the record. *See* Rice v. Collins, 546 U.S. 333, 338-39 (2006) ('State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'") (quoting § 2254(e)(1)) (citing Miller-El v. Dretke, 545 U.S. 231, 240 (2005)); *see also* Simmons v. Beard, 590 F.3d 223, 231 (3d Cir. 2009) ('Under the § 2254 standard, a district court is bound to presume that the state court's factual findings are correct, with the burden on the petitioner to rebut those findings by clear and convincing evidence.'). Importantly, the evidence against which a federal court measures the reasonableness of the state court's factual findings is the record evidence at the time of the state court's adjudication. Cullen v. Pinholster, – U.S. – [ ], 131 S. Ct. 1388, 1401-03 (2011)." Roundtree, 640 F.3d at 537-38 (parallel citations omitted).

(Emphasis added). Importantly, regardless of whether a state court has adjudicated a claim on the merits so as to invoke review under the standard set forth in § 2254(d), under 28 U.S.C. § 2254(e)(1) a federal habeas court must presume that all of the state court's factual findings are correct unless the presumption is rebutted by "clear and convincing evidence." *See*, *e.g.*, Palmer v. Hendricks, 592 F.3d 386, 392 (3d Cir. 2010) (citing 28 U.S.C. § 2254(e)(1)). *See also* Weeks v. Snyder, 219 F.3d 245, 259 (3d Cir. 2000) (quoting Marshall v. Longberger, 459 U.S. 422, 434 (1983), for the proposition that habeas review does not permit a federal court to redetermine the credibility of witnesses whose demeanor has been observed by the state court); Miller-El v. Cockrell, 537 U.S. 322, 339-41 (2003).

### C. **Ineffective Assistance of Counsel**

Ineffective assistance of counsel claims are "governed by the familiar two-prong test set forth in Strickland v. Washington, 466 U.S. 668 (1984)." Shelton v. Carroll, 464 F.3d 423, 438 (3d Cir. 2006) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003)). For AEDPA purposes, the Strickland test qualifies as "clearly established Federal law, as determined by the Supreme Court." Williams v. Taylor, 529 U.S. 362, 391 (2000). Under Strickland, a habeas petitioner must demonstrate that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's error, the result would have been different. 466 U.S. at 687. For the deficient performance prong, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Id. at 688. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

With respect to the sequence of the two prongs, the <u>Strickland</u> Court held that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.  In assessing an ineffective assistance of counsel claim, "the ultimate focus of inquiry must be on the fundamental fairness of the proceeding . . . .  In every case the court should be concerned with whether . . . the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." <u>Id</u>. at 696.

**D.  <u>Discussion</u>**

**1.  <u>Ineffective assistance of counsel for failing to object to closing argument</u>**

In Petitioner's first claim, he argues that trial counsel was ineffective for failing to object to certain statements made by the prosecutor during closing argument.  This claim was raised in his PCRA petition and addressed by Judge Cashman in his 1925(a) Opinion as follows:

> Graves maintains that his trial counsel was ineffective when she failed to object to the statements made by the prosecutor in closing arguments which Graves' believed tended to negate his self-defense since the prosecutor maintained that someone other than Graves had introduced deadly force into the altercation between Graves and Flowers.  The remarks which were made by the prosecutor which Graves believed mislead the jury are as follows:
>
> > You heard Luther Mackson.  He told you the victim, Shelton Flowers did not have a gun in that bathroom.  He punched him with his fist.  The defendant himself agreed.  And then what does Shelton Flowers do?  He runs.  He runs away.
> >
> > What's the defendant's friend do?  First thing he does is pull out a gun.  Who's introducing deadly force in this incident?  It's not Shelton Flowers.  It's Larue Graves.

And that is the key.  That is key under the law of
justification.  Who initiated deadly force.

Jury Trial Transcript, pp. 469-479; lines 15-2.

The problem with this current contention is that the District Attorney's
remarks were based upon the evidence that had been presented.  In the Superior
Court's Opinion with respect to Grave's direct appeal, it noted in its recital of the
facts that Graves was in the men's room of the Loew's Theater in Homestead,
Pennsylvania, washing his hands and talking to Tarue Bailey, when Flowers came
into the men's room, acknowledged Graves' presence and then struck him in the
head causing Graves to strike his head against the sink.  At that time Bailey
attempted to pull a gun from his waistband and Flowers' quickly exited the men's
room as he was being pursued by Graves who had a weapon in his hand.  The
statements made by the District Attorney during his closing did nothing more than
recount the testimony that had previously been given to the jury.

\* \* \* \*

It is clear from the testimony that was presented that the individual who
introduced deadly force in the altercation between Graves and Flowers was
Graves.  Several witnesses identified him as being the individual who ran from
the men's room in pursuit of Flowers and shot him several times.  Although
Flowers may have been the initial aggressor, Graves escalated that aggression by
introducing a deadly weapon to their altercation.  The Commonwealth also
established that Graves had the ability to safely retreat and could have reported
this incident to the police since the police were on the site providing security to
that movie theater.

While Graves maintains that the prosecutor attempted to misstate the facts
in an effort to negate his claims of self-defense, it is clear that the Court properly
instructed the jury as to the roles of the District Attorney and Graves' counsel in
advising that they were advocates and that the jury were the ultimate fact-finders.
The Court specifically told the jury to disregard any statements made by counsel
if those statements differ with their recollection as to what the facts were in
Graves' case.  (Trial Transcript, 497.)  It is presumed that the jury followed the
Court's instructions and decided its case based upon the facts that they determined
and not those as suggested by counsel. *Commonwealth v. Weiss, 565 Pa. 504,
776 A.2d 958 (2001)*.  It was Graves' burden to establish the ineffectiveness of his
trial counsel in accordance with the standards set forth in *Commonwealth v.
Kimbal*, *supra*.  Failure to establish any one of the three prongs of this test is
sufficient to dispose of the claim of the ineffectiveness of counsel and on that
basis without the necessity of ever adjudicating the issue as to the remaining two
prongs of the test. *Commonwealth v. Wilson, 543 Pa. 429, 672 A.2d 293 (1996)*.

(Resp't Ex. 24; ECF No. 8-7 at pp.39-43.)  The Superior Court adopted Judge Cashman's trial

court opinion with no further analysis.  (Resp't Ex. 27; ECF No. 8-9.)

Because the state courts rejected Petitioner's ineffective assistance of counsel claim on

the merits, this Court must review it under AEDPA's standard of review, which is set forth at 28

U.S.C. § 2254 and in section B, *supra*.

Under AEDPA, review is to proceed as follows.

. . . . "[W]e must first identify the applicable Supreme Court precedent and
determine whether it resolves the petitioner's claim." *Id.* (citing *Matteo,* 171 F.3d
at 888).  To do so, "it is not sufficient for the petitioner to show merely that his
interpretation of Supreme Court precedent is more plausible than the state court's;
rather, the petitioner must demonstrate that Supreme Court precedent requires the
contrary outcome." *Id.* (quoting *Matteo,* 171 F.3d at 888).  "If we determine that
the state court decision is not 'contrary to' the applicable Supreme Court
precedent, then we are required to advance to the second step in the analysis-
whether the state court decision was based on an 'unreasonable application of'
Supreme Court precedent." *Id.* (citing *Matteo,* 171 F.3d at 888).  In performing
this inquiry, "we are not authorized to grant habeas corpus relief simply because
we disagree with the state court's decision or because we would have reached a
different result if left to our own devices." *Id.* (citing *Matteo,* 171 F.3d at 889).
Rather, the state court's application of Supreme Court precedent must have been
"objectively unreasonable," *i.e.,* "[t]he federal habeas court should not grant the
petition unless the state court decision, evaluated objectively and on the merits,
resulted in an outcome that cannot reasonably be justified under existing Supreme
Court precedent." *Id.* (quoting *Matteo,* 171 F.3d at 890); *see also Price v.
Vincent,* 538 U.S. 634, 636, 643, 123 S.Ct. 1848, 155 L.Ed.2d 877
(2003) (unanimously reversing a decision to grant habeas relief as "exceed[ing]
the limits imposed on federal habeas review by 28 U.S.C. § 2254(d)" because
"[e]ven if we agreed with the Court of Appeals that the Double Jeopardy Clause
should be read to prevent continued prosecution of a defendant under these
circumstances, it was at least reasonable for the state court to conclude
otherwise.").

Hackett v. Price, 381 F.3d 281 (3d Cir. 2004) (citing Werts v. Vaughn, 228 F.3d 178,

196-97 (2000)).

First, the "clearly established Federal law" in which to analyze Petitioner's ineffective

assistance claims is set forth in <u>Strickland</u>, *supra*, and the state court applied this standard to

Petitioner's ineffectiveness claim.[8]  With regard to the first inquiry under AEDPA, Petitioner has not demonstrated that Strickland "requires the contrary outcome" with respect to his ineffectiveness claim, and therefore, the state courts' adjudication of this claim was not "contrary to" Strickland.  *See also* Werts, 228 F.3d at 202-04 ("[A] state court decision that applied the Pennsylvania [ineffective assistance of counsel] test did not apply a rule of law that contradicted Strickland and thus was not 'contrary to' established Supreme Court precedent.").

The dispositive question, then, is whether the state courts' adjudication of Petitioner's ineffective assistance of counsel claim was an "unreasonable application" of Strickland.  It was not.  In order to overcome AEDPA's standard of review, Petitioner must show that the state courts' decision "cannot reasonably be justified under existing Supreme Court precedent[,]" Matteo, 171 F.3d at 890, and, he falls far short of meeting this burden.

Petitioner argues that the prosecutor imputed guilt onto him by using the actions of Petitioner's friend to show that Petitioner introduced deadly force.  Petitioner argues that trial counsel was ineffective for failing to object to this statement because the statement negated Petitioner's self-defense claim.  However, Judge Cashman found that the prosecutor's statement that Petitioner's friend pulled the firearm was simply recounting evidence that had already been submitted to the jury.  Several witnesses testified that Petitioner chased the victim and shot at him several times.  As Respondents correctly state, Petitioner's self-defense claim was defeated because evidence showed that he chased the victim and killed him and that he did not avail himself of available avenues of escape.  It was irrelevant to Petitioner's self-defense claim that

---

[8] Although Pennsylvania courts typically articulate a three-prong test for gauging ineffective assistance claims, and Strickland sets forth its test in two prongs, the legal evaluation is the same, and the differences merely reflect a stylistic choice on the part of state courts.  *See* Werts, 228 F.3d at 202–03.

Petitioner's friend produced the firearm. Therefore, counsel was not ineffective in failing to object to the prosecutor's statement, and, consequently the state court's disposition of this ineffectiveness claim was not an unreasonable application of <u>Strickland</u>. Furthermore, the state court's decision was not an unreasonable determination of the facts in light of the evidence presented. Petitioner has thus failed to meet his burden under 28 U.S.C. 2254(d) and relief should be denied.

### 2. <u>Ineffective assistance of counsel during closing arguments</u>

Petitioner's next claim is that trial counsel was ineffective for failing to argue in closing arguments that the Commonwealth had the burden to disprove Petitioner's self-defense claim. Once again, this claim was raised in Petitioner's PCRA petition and addressed by Judge Cashman in his Pa. R.A.P. 1925(a) Opinion as follows.

> Grave's second claim of error is that this Court erred in failing to find that his trial counsel was ineffective for failing to instruct the jury in her closing argument that it was the Commonwealth's burden to disprove Graves' claim of self-defense beyond a reasonable doubt. The fallacy in this contention is that there is no requirement imposed upon counsel, whether it be the District Attorney or the defense counsel, to instruct the jury as to what the applicable laws with regard to the cases being submitted to them. That role rests solely and exclusively with the Trial Court. The Trial Court satisfied its obligation to properly instruct the jury as to what the law is with respect to this claim of self-defense and the Commonwealth's burden to disprove that claim of self-defense. (Trial Transcript, pp. 488-491). The Court explained in Graves' claim of self-defense and then told the jury that it was the Commonwealth's burden to disprove that claim beyond a reasonable doubt and it went through the three situations envisioned in 18 Pa.C.S.A. §505(b)(2) and analyzed the burden under each situation that the Commonwealth was required to meet in order to disprove the claim of self-defense.

(Resp't Ex. 24; ECF No. 8-7 at pp.43-44.) The Superior Court adopted Judge Cashman's trial court opinion with no further analysis. (Resp't Ex. 27; ECF No. 8-9.)

Like in his first claim, the state court applied the <u>Strickland</u> standard to this claim of ineffective assistance, and Petitioner has not demonstrated that <u>Strickland</u> "requires the contrary outcome." Therefore, the state courts' adjudication of this claim was not "contrary to" <u>Strickland</u>. *See* <u>Werts</u>, *supra*.

Neither was the state courts' adjudication of this claim an "unreasonable application" of <u>Strickland</u>. The state court explained that counsel was not required to instruct the jury on the applicable law. Instead that requirement rested with the trial court and it satisfied its obligation in this case. Petitioner cannot show how he was prejudiced as the trial court properly instructed the jury as to the law of self-defense. Accordingly, trial counsel was not ineffective, and thus the state court's analysis was not an unreasonable application of <u>Strickland</u>. Petitioner has failed to meet his burden under both 28 U.S.C. § 2254(d)(1)-(2).

### 3.  **Failure to give "heat of passion" jury instruction**

Petitioner's third claim is that the trial court erred in denying the requested instruction on "heat of passion" as to the lesser charge of homicide. This claim was raised on direct appeal and addressed by the Superior Court as follows:

> Appellant asserts first that the trial court abused its discretion by failing to instruct the jury on the lesser-included offense of "heat of passion" voluntary manslaughter. It is correct that a trial court must instruct a jury on the lesser-included offense of voluntary manslaughter where the instruction is requested, where the evidence presented at trial would support such a charge, and where the offense has been made an issue in the case. *See Commonwealth v. Browdie*, 543 Pa. 337, 349, 671 A.2d 668, 674 (1996). Although the instruction was requested properly, the evidence did not merit such an instruction. We reach this conclusion due to Appellant's presentation of evidence to support his theory of self-defense. "Heat of passion" voluntary manslaughter is an appropriate verdict where the evidence demonstrates the defendant acted under a sudden and intense passion, without time for the defendant to "cool off," resulting from serious provocation by the victim. *Id*., at 344, 671 A.2d at 671; *see also Commonwealth v. Berry*, 461 Pa. 233, 237, 336 A.2d 262, 264 (1975) (in order to find voluntary manslaughter, defendant must act in "heat of passion" without sufficient time to

"cool off").  The term "heat of passion" connotes emotions such as anger, rage, sudden resentment, or terror, which render the mind incapable of reason. ***Browdie***, at 344, 671 A.2d at 671.  However, Appellant's theory of self-defense, and the evidence presented in support of that theory, indicated this his mind was capable of reason.  The certified record indicates that Appellant asserted at trial that he believed reasonably that his life or safety or the life or safety of Ms. Mack was imperiled by the victim.  Therefore, Appellant's entire case rested upon the premise that the action taken, *i.e.*, shooting and killing the victim, was reasonable for a man in his situation.  As such, a "heat of passion" voluntary manslaughter jury charge was in direct conflict with the evidence presented by Appellant for his theory of self-defense.  ***Id***., at 344, 671 A.2d at 671; ***see also Commonwealth v. Colandro***, 231 Pa. 343, 353-53, 80 A.2d 571, 574-75 (1911) (explaining that "heat of passion" voluntary manslaughter jury instruction is not proper where one kills victim due to fear for their life from victim's behavior; if self-defense theory is utilized, proper jury instruction is "unreasonable belief" voluntary manslaughter).  Thus, the evidence did *not* support a jury charge regarding "heat of passion" voluntary manslaughter.  ***Id***., at 344, 671 A.2d at 671.

The dissent suggests that simply because the victim punched Appellant and because Appellant was, as a result, "mad," that the trial court should have issued the "heat of passion" voluntary manslaughter jury charge.  We disagree.  As we explained in ***Commonwealth v. Galloway***, 485 A.2d 776, 784 (Pa. Super. 1984), "[a] person who commits heat of passion voluntary manslaughter must not have been able to think clearly enough to control his actions as a result of an objectively serious provocation."  Whereas, a person who commits unreasonable belief voluntary manslaughter may possess the mistaken belief about the necessity for self-defense without being subject to the strong emotion of sudden passion, or may be mistaken because he was the aggressor or violated a duty to retreat.  ***Id***., 485 A.2d at 784.  In the present case, Appellant's testimony is clear that he was not blinded by rage or overwhelming fear when he shot the victim.  Rather, the essence of Appellant's testimony that he believed *reasonably* that his life or safety or the life of Ms. Mack was imperiled by the victim, and his testimony about the "sucker punching" was a component of that reasonable fear.  Accordingly, the trial court did not err by refusing to charge the jury on the issue of "heat of passion" voluntary manslaughter because it was not an issue in the case. ***Browdie***, at 344, 671 A.2d at 671; ***see also Colandro***, at 353-53, 80 A.2d at 574-75.

(Resp't Ex. 14; ECF No. 8-4 at pp.36-39.)[9]  This claim was also raised by Petitioner in his PCRA

petition, albeit as one of constitutional error that undermined the truth-determining process, but

---

[9] Justice Klein issued the dissenting opinion.

Judge Cashman deemed the claim previously litigated due to the Superior Court's treatment of the claim on direct review. (Resp't Ex. 24; ECF No. 8-7 at p.44.)

First, this claim fails because Petitioner cannot point to any "clearly established Federal law" requiring a trial court to instruct a jury on a lesser included offense in a non-capital case. *See* Beck v. Alabama, 447 U.S. 625, 638, n.14 (1980) (holding that state criminal defendants in a capital murder case may be entitled to instructions on lesser-included offenses but expressly declining to rule on the issue of whether "the Due Process Clause would require the giving of such instruction in a noncapital case"). Federal courts may grant habeas relief only on the basis of federal law that has been clearly established by the Supreme Court, 28 U.S.C. § 2254(d)(1). While Pennsylvania law may require that an instruction on a lesser-included offense be given when requested, when the offense has been made an issue in the case and when the trial evidence reasonably supports such an instruction, Commonwealth v. Williams, 415 A.2d 403, 404 (1980), the Supreme Court has never held that the Due Process Clause requires instructing the jury on a lesser included offense in a non-capital case, Beck, *supra*, *See also* Keeble v. United States, 412 U.S. 205, 208, 214 (1973) (neither due process nor the Constitution requires a jury instruction on a lesser-included offense where the evidence does not support it). Therefore, habeas relief is unavailable to Petitioner under the standard of review set forth in 28 U.S.C. § 2254(d)(1).

Second, Petitioner's claim appears to simply be one of failing to correctly apply state law in that he believes there was evidence to support the "heat of passion" jury instruction and that it was an issue in the case. However, "federal habeas corpus relief does not lie for errors of state law." Estelle v. McGuire, 502 U.S. 62, 67 (1991) (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990)). Because a claim challenging a state court's failure to give a lesser included offense instruction is a matter of state law, this Court will not re-examine the Superior Court's

determination that there was no trial court error in refusing to give the "heat of passion" instruction.  *See* Johnson v. Rosemeyer, 117 F.3d 104, 115 (3d Cir. 1997) ("[O]nly in extraordinary and compelling circumstances should a federal district court in a habeas case decline to follow the opinions of a state intermediate court of appeal with respect to state law rendered in earlier proceedings involving the petitioner.").

Third, it was not an unreasonable determination by the state court in finding that "heat of passion" was not an issue in the case.  Indeed, the Superior Court aptly explained why, under the facts of this case, the heat of passion instruction would have been in direct conflict with the evidence presented for Petitioner's self-defense theory.  "Habeas relief for a due process violation concerning an absent or defective jury instruction is available only when the absence of an instruction, or a defective instruction, infects the entire trial with unfairness."  Real v. Shannon, 600 F.3d 302, 309 (3d Cir. 2010) (quoting Albrecht v. Horn, 485 F.3d 103, 129 (3d Cir. 2007)).  Given the evidence presented by Petitioner at his trial, and the fact that the "heat of passion" defense was in direct conflict with his self-defense theory, it cannot be said that the absence of the instruction was so damaging so as to "infect[] the entire trial with unfairness." Real, 485 F.3d at 309.  Thus, Petitioner should be denied habeas relief on this claim.

### 4.  Unconstitutional sentence

Although somewhat difficult to interpret, Petitioner's final claim appears to be that his mandatory life sentence for third-degree murder pursuant to 42 Pa. C.S.A. § 9715, which was based on his prior conviction for voluntary manslaughter, is unconstitutional.  In this regard, Petitioner appears to argue that the sentencing statute at issue, 42 Pa. C.S.A. § 9715, is unconstitutional as a result of the United States Supreme Court's decision in Alleyne v. United States, 133 S. Ct. 2151 (2013) because the statute's "notice" requirements violate his right to a

trial by jury. The first time Petitioner raised this claim was in his second PCRA petition. (Resp't Ex. 31; ECF No. 8-11 at pp.3-8.) While that petition was still pending in state court at the initiation of these federal habeas proceedings, the state court has since ruled, on February 16, 2016, that Petitioner's second PCRA petition was time-barred under 42 Pa. C.S.A. § 9545(b)(1), which requires that a PCRA petition, even a second or subsequent petition, be filed within one year of the date the judgment becomes final. Thus, the claim is now procedurally defaulted.

"The procedural default doctrine precludes a federal habeas court from 'review[ing] a question of federal law decided by a state court if the decision of that court rests on a state law ground that is *independent* of the federal question and *adequate* to support the judgment.'" Bronshtein v. Horn, 404 F.3d 700, 707 (3d Cir. 2005) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)). A state's procedural rules are entitled to deference by federal courts, and violation of a state procedural rule may constitute an independent and adequate state ground for denial of federal review of habeas claims. Coleman, 501 U.S. at 750.

A state procedural rule is considered independent if it does not rely on the merits of a federal claim or "rest[] its decision primarily on federal law." Harris v. Reed, 489 U.S. 255, 260-61 (1989). Such is the case here since the state court's decision was based on the application of a state statute of limitations. Additionally, such a rule is adequate under the procedural default doctrine if it is "firmly established and regularly followed" within the state. Ford v. Georgia, 498 U.S. 411, 423-24 (1991); James v. Kentucky, 466 U.S. 341, 348 (1984). The Third Circuit has found that as of November 23, 1998, at the earliest, 42 Pa. C.S.A. § 9545(b)'s filing limit was firmly established and regularly applied. Fahy v. Horn, 516 F.3d 169, 189 (3d Cir. 2008). The state rule at issue here qualifies as "adequate" because it was firmly established and

regularly followed in non-capital cases at the time Petitioner's default occurred. As such, Petitioner's claim is procedurally defaulted.

A petitioner whose constitutional claims are procedurally defaulted can overcome the default, thereby allowing federal court review, if he can demonstrate "cause" for the default, *i.e.*, that some objective factor "external to the defense" impeded efforts to comply with the state's procedural rule, and "actual prejudice." Coleman, 501 U.S. at 750; *see also* Murray v. Carrier, 477 U.S. 478, 488 (1986). Petitioner has not met that burden.

In any event, in finding that Petitioner's second PCRA petition was time-barred, the state court also determined that this claim was without merit. Specifically, it stated that the Supreme Court's decision in Alleyne noted that the parties were not contesting the continued validity of Almendarez-Torres v. United States, 523 U.S. 224 (1998), which held that penalty provisions that enhance a statute based upon prior convictions did not create a separate crime. Alleyne, *supra*, at 1221, n.1. *See also* Apprendi v. New Jersey, 530 U.S. 466, 490 (2000) ("*Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.") (emphasis added). Petitioner was sentenced to a mandatory life sentence as a result of his prior conviction for voluntary manslaughter. *See* 42 Pa. C.S.A. § 9715. The prior conviction was not an "element" of the third-degree murder charge for which he was convicted. Apprendi, *supra*; Alleyne, *surpa*, at 2155 (Any fact that increases the mandatory minimum sentence for a crime is an "element" of the crime, not a "sentencing factor," that must be submitted to the jury and proven beyond a reasonable doubt). Alleyne is simply inapplicable to Petitioner's case, and, therefore, this claim should be denied.

### E. **Certificate of Appealability**

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. As provided for in 28 U.S.C. § 2253, "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) (citing Slack v. McDaniel, 529 U.S. 473, 484 (2000)). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Petitioner has not made the requisite showing in these circumstances. Accordingly, a certificate of appealability should be denied.

## III.   **CONCLUSION**

For the reasons set forth above, it is respectfully recommended that the Petition for Writ of Habeas Corpus filed by Petitioner Larue Graves (ECF No. 1) be denied and that a Certificate of Appealability also be denied.

In accordance with the applicable provisions of the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B)&(C), and Rule 72.D.2 of the Local Rules of Court, Petitioner shall have fourteen (14) days from the date of the service of this report and recommendation to file written

objections thereto.  Petitioner's failure to file timely objections will constitute a waiver of his appellate rights.

Dated:  May 20, 2016.

_____
Lisa Pupo Lenihan
United States Magistrate Judge


cc:  Larue Graves
     MA-8295
     SCI Dallas
     Follies Road, Drawer K
     Dallas, PA  18612-0286

     Counsel of record
     *Via CM/ECF electronic mail*